The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
4. An employer-employee relationship existed on June 2, 1997, the employees date of injury.
5. The carrier on the risk at the time of the injury was Utica Mutual.
6. The defendants have admitted the compensability of the injury giving rise to this claim.
 ***********
Based upon the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant-employer in various capacities from May 1, 1989 to September 4, 1998.
2. Plaintiff was injured on June 2, 1997 while he was attempting to perform his duties for defendant-employer. While using a chain saw plaintiff cut his left long finger. Plaintiffs claim was accepted by the defendants and medical expenses to date have been paid. Plaintiffs treating physician was Dr. Williams J. Mallon.
3. On January 28, 1998, after surgery related to this injury, plaintiff returned to his job as a maintenance worker for defendant-employer, subject to restrictions assigned by Dr. Mallon, which included no lifting over 20 pounds.
4. On that date, plaintiffs supervisor, Lloyd Crank, assigned him the task of setting a toilet, a job that violated the restrictions assigned by Dr. Mallon.
5. When plaintiff informed Mr. Crank that he could not set the toilet due to his restrictions, Mr. Crank stated that he had no work for plaintiff, and sent him home.
6. On February 16, 1998, Dr. Mallon took plaintiff out of work entirely, for a period of four weeks.
7. Plaintiff was not offered any work that met his restrictions until February 25, 1998, when plaintiff was told to speak to Boyd Cantrell, a supervisor at a subsidiary of the company, about a job at the Village Lanes Bowling Center.
8. During this period, plaintiff was willing to accept reasonable work offered to him that met his restrictions. Plaintiff was behind on his bills, his wife was sick and he was in need of income.
9. Plaintiff met with Mr. Cantrell on February 25, 1998 and agreed to start a full-time, third shift position at the bowling center on March 3, 1998, even though Dr. Mallon had written him out of work until March 16, 1998.
10. Plaintiffs primary responsibility was lane maintenance, a four-hour task that consisted of oiling the bowling lanes. Due to his restrictions, plaintiff could not handle the machine used for oiling the lanes without the assistance of another person.
11. To accommodate plaintiffs restrictions, Mr. Cantrell assigned other employees to assist him with lane maintenance. Mr. Cantrell hired an employee known as "Mack, whose job was to assist plaintiff with the lane maintenance. "Mack did not always show up for work and he was fired at some point during the time plaintiff worked at the Village Lanes.
12. For the first few weeks, plaintiffs only duty was lane maintenance, a task that took approximately four hours per night. During this time, there were nights he could not get into the building because he had not been given a key and Mr. Cantrell was elsewhere, as well as nights when he could not oil the lanes because there was no one present to assist him.
13. Plaintiff was eventually assigned additional duties. Some of these were ongoing "independent project work that he could work on whether or not Mr. Cantrell was present. Most of the additional duties were assigned on the night they were to be done.
14. Mr. Cantrell frequently was not present during plaintiffs shift. He sometimes worked other shifts and sometimes worked at the companys other bowling center, the Mardi Gras Lanes. On the nights where he was present, he often arrived after the plaintiff.
15. Throughout plaintiffs time at Village Lanes, there were many nights when no duties other than lane maintenance had been assigned and on some of those nights the lane maintenance could not be done because nobody was there to assist plaintiff.
16. Mr. Cantrell characterized plaintiff as a good, thorough worker and testified that he had no complaints about the quality of plaintiffs work, nor any complaints about plaintiff leaving when his assigned tasks were finished.
17. Plaintiff was provided fewer than forty hours per week at the bowling center.
18. Mr. Cantrell never spoke to plaintiff to complain about his working fewer than forty hours per week and had taken no steps in six months to discipline him, fire him or threaten to fire him for the nights when plaintiff worked fewer than eight hours or did not work at all.
19. Renee Murphy, the general manager of the Village Lanes and the Mardi Gras Lanes, rarely worked during Mr. Browns shift, often worked at the Mardi Gras Lanes and had little, if any, direct contact with plaintiff.
20. Ms. Murphy testified that work had been made available which plaintiff did not accept, that he frequently skipped work without warning or excuse, and that he had habitually come in late and left early without finishing his work.
21. Ms. Murphy stated on direct examination that she had attempted to contact Mr. Brown by telephone numerous times, but that "I never spoke to him.
22. Ms. Murphy testified that in six months no steps had been taken to discipline, threaten or fire plaintiff for his alleged unexcused absences, tardiness and leaving early. Ms. Murphy did not have first hand knowledge of plaintiffs work activities at the Village Lanes.
23. When asked by defense counsel whether eight hours per night had been made available to plaintiff, Mr. Cantrell replied, "The days that I was there with him, yes, and there was always four hours a day, definitely. And I could have turned it into eight hours a day
if, you know, wed have got a little more training, very easy.
24. Plaintiff and Mr. Cantrell were the only two witnesses with first hand knowledge of the number of hours of work that were made available to plaintiff. Plaintiff was offered fewer than forty hours of work per week that complied with his restrictions during the time period he worked at Village Lanes. Plaintiff was willing to accept reasonable work offered to him during the period of March 3, 1998 to September 4, 1998, so long as it met his restrictions.
25. Plaintiffs average weekly wage prior to his injury was $262.73, which yields a compensation rate of $175.16 per week.
26. Plaintiff was unable to earn any income during the period January 28, 1998 through March 2, 1998 due to his compensable injury.
27. As a result of plaintiffs compensable injury by accident, he has sustained a 10% permanent partial disability of his left long finger. Defendants stipulated to the 10% disability yet did not pay it to plaintiff within 14 days of its due date. Plaintiff is therefore entitled to a 10% penalty pursuant to N.C. Gen. Stat. 97-18.
28. This appeal was brought by the insurer and the Commission by this decision orders the insurer to make, or to continue payments of benefits, including compensation for medical expenses, to the injured employee. The Full Commission hereby determines that the cost to the injured employee of this appeal including therein reasonable attorneys fee of $500.00 shall be paid by the insurer as a part of the bill of costs.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to temporary total disability benefits for the period from January 28, 1998 to March 2, 1998. N.C. Gen. Stat.97-29.
2. From March 3, 1998 to September 4, 1998, plaintiff returned to work at reduced hours as a result of his work-related injury. Plaintiff is entitled to temporary partial disability benefits for the period from March 3, 1998 to September 4, 1998, which was during the healing period. While it is loss of capacity to work that is compensable and not salary loss alone, plaintiffs injury-related restrictions kept him from working full time and constitute a loss of capacity to work. N.C. Gen. Stat. 97-30.
3. Plaintiff is entitled to permanent partial disability compensation benefits on account of his 10% disability to his left long finger. N.C. Gen. Stat. 97-31.
4. There is insufficient evidence to show that plaintiff refused suitable employment procured for him suitable to his capacity. N.C. Gen. Stat. 97-32.
5. The Full Commission finds that the defendants did not defend this case on unreasonable grounds. Therefore, plaintiff is not entitled to sanctions. N.C. Gen. Stat. 97-88.1.
6. Plaintiff is entitled to have $500.00 as a reasonable attorney fee for defending this appeal taxed as costs against the defendants. N.C. Gen. Stat. 97-88.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorneys fee hereinafter awarded, defendants shall pay to plaintiff temporary total disability compensation in the amount of $175.16 per week for the period of January 28, 1998 through March 2, 1998. Said amount has accrued and shall be paid to plaintiff in a lump sum. Since defendants did not appeal from this part of the Award of the Deputy Commissioner, defendants shall pay a 10% penalty on any part not yet paid. Defendants shall pay interest at 8% from the date of the hearing before the Deputy Commissioner until the date paid.
2. Subject to an attorneys fee hereinafter awarded, defendants shall pay to the plaintiff temporary partial disability benefits pursuant to N.C. Gen. Stat. 97-30 for the period beginning March 3, 1998 and continuing through September 4, 1998. Said amount shall be paid to plaintiff in a lump sum. Defendants shall pay interest at 8% from the date of the hearing before the Deputy Commissioner until the date paid.
3. Defendants shall pay plaintiff permanent partial disability compensation for his 10% disability to his left long finger pursuant to N.C. Gen. Stat. 97-31 and subject to an attorney fee. Since defendants stipulated to the 10% disability yet did not pay it to plaintiff within 14 days of its due date, defendants shall pay a 10% penalty on the amount of this award. Defendants shall pay interest at 8% from the date of the hearing before the Deputy Commissioner until the date paid.
4. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable work related injury for so long as said medical treatment gives relief, effects a cure or lessens plaintiffs period of disability.
5. An attorney fee of 25% of the compensation awarded to plaintiff in paragraphs 1-3 of this award is approved and is to be deducted and sent directly to plaintiffs counsel by the defendants.
6. Defendants are to pay the costs, including an expert witness fee of $300.00 to Dr. William J. Mallon and an attorney fee of $500.00 to the attorney for plaintiff.
This 26th day of January 2001.
 S/____________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/______________________ CHRISTOPHER SCOTT COMMISSIONER